IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ALMA H., § | |
|    PLAINTIFF, § | |
| § | |
| V. § | CASE NO. 3:24-CV-1895-BK |
| § | |
| COMMISSIONER, SOCIAL SECURITY § | |
| ADMINISTRATION, § | |
|    DEFENDANT. § | |

**MEMORANDUM OPINION AND ORDER**

Pursuant to 28 U.S.C. § 636(b) and the parties' consent to proceed before the undersigned United States magistrate judge, the Court now considers this appeal of the denial of Plaintiff's application for Social Security supplemental income and disability benefits. Docs. 1, 12, 13. As detailed herein, the Commissioner's decision is **AFFIRMED**.

## I. BACKGROUND

### A. Procedural History

Plaintiff seeks judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act ("Act"). Doc. 1. In March 2021, Plaintiff concurrently filed for DIB and SSI, alleging a period of disability beginning in March 2020 resulting from hypothyroidism, adrenal disease, attention deficit disorder, anxiety, depression, narcolepsy, disorder of steroid metabolism, and abnormal liver functions. Doc. 11-1 at 248-58, 298. Plaintiff's claim was denied at all administrative levels,

and she now appeals to this Court under 42 U.S.C. § 405(g).  Doc. 11-1 at 140-44, 159-60, 32, 22.

### B. Factual History

Plaintiff was 43 years old at the time of her alleged disability onset, has a high school education, and has past relevant work as a nurse's aide and patient care technician.  Doc. 11-1 at 299.

### C. Medical Opinion Evidence

Dr. Antonio Roman, M.D., Plaintiff's treating psychiatrist since 2014, provided a Mental Status Report dated April 8, 2021, in which he asserted that Plaintiff has a history of recurrent depression, generalized anxiety with panic attacks, and narcolepsy.  Doc. 11-1 at 456.  Dr. Roman opined that Plaintiff had a poor prognosis, impaired concentration, and poor ability to sustain work and respond to stress.  Doc. 11-1 at 457-58.  Otherwise, Dr. Roman noted that Plaintiff had fair insight and judgment, normal memory, and was goal oriented.  Doc. 11-1 at 457.  The administrative record in this case also contains Plaintiff's medical records, including treatment notes documenting Dr. Roman's care of Plaintiff.  *See, e.g.*, Doc. 11-1 at 418-59, 930-1020.

Dr. Michael P. Dolan, Ph.D., also conducted a psychological consultative examination of Plaintiff in May 2021 via telehealth.  Doc. 11-1 at 913.  Dr. Dolan took note of Plaintiff's activities of daily living:

> [Plaintiff] reports she is not able to care for personal hygiene without help.  She states she does need assistance to manage her appointments and medications.  She is able to do household duties.  She does have a driver's license.  She is able to count money and make change.  She states[,] "I can handle my own money."

2

Doc. 11-1 at 914. Dr. Dolan noted that Plaintiff was polite, cooperative, and respectful. Doc. 11-1 at 913-15. Dr. Dolan provisionally diagnosed Plaintiff with generalized anxiety disorder and unspecified depressive disorder. Doc. 11-1 at 916.

The record also includes the reports of medical advisors Harpreet Khurana, M.D., who specializes in neurology, and Dr. David Atkins, Ph.D., who specializes in psychology. Doc. 11-1 at 123, 126. Dr. Khurana opined that Plaintiff's physical impairments are non-severe and "have no more than a minimal effect on [Plaintiff's] physical ability to do basic work activities." Doc. 11-1 at 123. Dr. Atkins opined on Plaintiff's mental limitations, concluding that Plaintiff could, *inter alia*, "[a]t a maximum . . . sustain attention for up to 2-hour blocks of time when performing simple and routine work-related tasks requiring no greater than two steps." Doc. 11-1 at 127.

### D. Other Record Evidence

At the administrative hearing, Plaintiff testified to her subjective symptoms. Doc. 11-1 at 59-75. Plaintiff testified that she experienced numerous symptoms that interfered with her ability to work, including sleep disturbances, depressive moods, diminished interest in daily activities, and trouble remembering and concentrating. Doc. 11-1 at 63. Plaintiff further testified that due to these symptoms, she missed work several times a week and often had to leave work early because of fatigue. Doc. 11-1 at 63, 65. As to her personal activities, Plaintiff stated that her anxiety and depression symptoms also impacted her ability to go grocery shopping and care for her children, particularly her child who suffers from an undisclosed disability. Doc. 11-1 at 70. Plaintiff averred that because of her symptoms, a nurse helps to care for her children. Doc. 11-1 at 70-71.

Plaintiff provided a written statement of Elizabeth Reyes, a nurse who helps care for Plaintiff's disabled child. Doc. 11-1 at 327-34. Ms. Reyes indicates in her statemen that Plaintiff is unable to communicate with others and exhibited "fears of offending people," depressed mood, and appetite and sleep disturbances. Doc. 11-1 at 327. Regarding childcare, Ms. Reyes noted that Plaintiff "helps feed, groom, [and] wash clothes, with constant reminder." Doc. 11-1 at 328; *see also* Doc. 11-1 at 330 (noting that Plaintiff needs reminders to take care of personal hygiene).

### E. The ALJ's Findings

The ALJ found that Plaintiff met the insured status requirements of the Act and had not engaged in substantial gainful activity since March 1, 2020. Doc. 11-1 at 38. The ALJ also found that Plaintiff had the severe impairments of (1) major depressive disorder, (2) attention deficit disorder, and (3) generalized anxiety disorder. Doc. 11-1 at 38. The ALJ concluded, however, that none of Plaintiff's impairments, or any combination thereof, met or "medically equal[ed]" an impairment listed in the applicable regulations. Doc. 11-1 at 38-39.

The ALJ further found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with certain non-exertional limitations:

> She retains the ability to understand, remember, and carry out simple, routine repetitive tasks. She cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas. She is able to accept instructions from supervisors. She can have interaction with coworkers on an[ ] occasional basis, in a setting where tasks are performed individually and not in coordination with others as part of a team. She can have no work-related contact with the public. She is able to maintain sufficient attention and concentration to perform simple repetitive tasks and adapt to routine changes that accompany simple unskilled work.

Doc. 11-1 at 40. The ALJ further found that while Plaintiff did not have the RFC to perform her past work, there were a significant number of jobs in the national economy that she could perform. Doc. 11-1 at 44-45. The ALJ thus concluded that Plaintiff was not disabled under the Act. Doc. 11-1 at 45.

## II. APPLICABLE LAW

The definition of disability under the Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner utilizes a sequential five-step inquiry: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairments are "severe"; (3) whether the claimant's impairment "meets or equals" one of the listings in the relevant regulations; (4) whether the claimant can still do her past relevant work; and (5) whether the impairment prevents the claimant from doing any other available work. *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden on the first four steps. *Id.* (citation omitted). If the claimant meets her burden, the burden then shifts to the Commissioner to "prove the claimant's employability." *Id.* (citation omitted).

The Court's review "is exceedingly deferential and limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (cleaned up). The Court can neither "reweigh the evidence or substitute its judgment for the Commissioner's." *Id.* A finding that substantial evidence does not exist "is appropriate only if no credible evidentiary choices or medical findings support the decision." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (cleaned up).

## III. ANALYSIS

### A. The ALJ's RFC Finding Is Supported by Substantial Evidence.

Plaintiff challenges the ALJ's finding at step five that she could perform the jobs of cleaner, laundry worker, and church janitor. Doc. 12-2 at 10-13; Doc. 11-1 at 45. Relying on the Dictionary of Occupational Titles ("DOT"), Plaintiff categorizes each of these positions as jobs with a reasoning level of two. Doc. 12-2 at 12. A job with a reasoning level of two requires the Plaintiff to "[a]pply commonsense understanding to carry out **detailed** but uninvolved written or oral instructions [and] [d]eal with problems involving a few concrete variables in or from standardized situations." Doc. 12-2 at 12 (emphasis in original) (citing the DOT).

Plaintiff, however, argues that the medical opinion evidence restricts her to working jobs requiring only a reasoning level of one. Doc. 12-2 at 11-12. Plaintiff bases this argument on the medical opinion testimony of Dr. Atkins,[1] who opined that Plaintiff could

> [a]t a maximum . . . sustain attention for up to 2-hour blocks of time when performing simple and routine work-related tasks requiring *no greater than two steps*. The [Plaintiff] can follow simple work-like procedures, and make simple work-related decisions. The [Plaintiff] would not require inordinate supervision

---

[1] The Commissioner correctly notes that Plaintiff mistakenly identifies Dr. Khurana as the physician who opined on Plaintiff's mental limitation related to two-step tasks. Doc. 18 at 1 n.2; *see* Doc. 12-2 at 11-13 (referring to Dr. Khurana). Upon review of the record, the Court confirms Dr. Atkins is the medical advisor who opined on Plaintiff's mental limitations. Doc. 11-1 at 127.

6

>   when performing simple and routine tasks. The [Plaintiff's] symptoms would not prevent sustaining mental demands associated with performance of simple, routine tasks throughout an ordinary workday/workweek.

Doc. 11-1 at 127 (emphasis added). Thus, Plaintiff purports that the ALJ's findings conflict with Dr. Atkins's medical opinion and the DOT's reasoning levels for these positions because the ALJ found that Plaintiff's RFC was limited to "carry[ing] out *simple*, routine repetitive tasks." Doc. 11-1 at 40 (emphasis added). Plaintiff contends that the ALJ's RFC instead should have restricted Plaintiff to two-step tasks and "included the limitation [proposed by Dr. Atkins] in the RFC as written." Doc. 12-2 at 12. By not including this limitation in the RFC, Plaintiff alleges the ALJ committed prejudicial error. Doc. 12-2 at 12.

At the outset, the Court notes that Plaintiff's attorney did not identify any conflict through cross examination of the vocational expert at the administration hearing. Doc. 11-1 at 78; *see Powell v. Kijakazi*, No. 3:21-CV-2226-G-BH, 2023 WL 2563738, at *14 (N.D. Tex. Feb. 27, 2023) (Ramirez, J.) ("Plaintiff's counsel failed to present any conflicts through cross-examination. Nothing at the hearing appears to have triggered any reason for the ALJ to elicit a 'reasonable explanation' for any possible conflicts.") (internal citations omitted), *adopted by* 2023 WL 2563088 (N.D. Tex. Mar. 17, 2023) (Fish, J.). Consequently, Plaintiff has waived the right to challenge any purported conflict at this stage. *See Barlett v. Colvin*, No. 3:14-CV-1595-BN, 2015 WL 4041848, at *6 (N.D. Tex. July 2, 2025) (Horan, J.) ("Plaintiff cannot challenge in this Court any implied conflict that he failed to raise at the hearing."). Nevertheless, the Court considers the substance of Plaintiff's claims of error.

"Courts in the Fifth Circuit, as well as appellate and district courts outside the Fifth Circuit, have already determined that there is no direct or apparent conflict between an RFC

7

limiting a plaintiff to *simple* instructions or tasks and . . . testimony that a plaintiff may perform work at a reasoning level of two." *Powell*, 2023 WL 2563738, at *14 (cleaned up) (emphasis added); *Martinez v. O'Malley*, No. EP-24-CV-145-ATB 2025 WL 913476, at *11 (W.D. Tex. Mar. 25, 2025) ("[A]n RFC limitation to 'simple tasks,' as the ALJ determined, is consistent with an RFC limitation to 'understand, remember, and carry out detailed but not complex instructions[.]"). Contrary to Plaintiff's contentions, the ALJ properly accounted for Plaintiff's restriction to two-step tasks by limiting Plaintiff's RFC to "simple, routine repetitive tasks." Doc. 11-1 at 40; *Powell*, 2023 WL 2563738, at *14. Because the ALJ properly accounted for Plaintiff's limitations in the RFC, she also properly accounted for the limitations in her hypothetical question to the vocational expert. *See Caulder v. Comm'r of Soc. Sec.*, No. 7:22-CV-127-O-BP, 2023 WL 4915069, at *5 (N.D. Tex. May 23, 2023) (Ray, J.) (rejecting the plaintiff's argument that the ALJ failed to account for accepted functional limitations in RFC and hypothetical questions to vocational expert), *adopted by* 2023 WL 4923960 (O'Connor, J.).

The ALJ is responsible for determining the claimant's RFC and is not required to adopt the RFC verbatim from a medical opinion. *See Webster*, 19 F.4th at 719 ("Though the ALJ neither adopted the state agency report verbatim nor accepted the [medical physician] testimony, it cannot be said that his decision was not based on substantial evidence or that he improperly applied the relevant legal standards."). Further, "the ALJ was not required to describe why she did not include each limitation in her RFC analysis." *Caulder*, 2023 WL 4915069, at *3; Doc. 12-2 at 11 (arguing that the "ALJ provided no reason for rejecting the two-step task limitation," and "[b]y failing to explain her findings, the ALJ committed legal error."). Because the ALJ's RFC determination is consistent with Plaintiff's functional limitations, remand is not required.

### B. The ALJ Adequately Evaluated the Medical Opinion Testimony of Dr. Roman.

Plaintiff also alleges that the ALJ failed to properly consider the medical opinion of Plaintiff's treating psychiatrist, Dr. Roman.  Doc. 12-2 at 13-16.  According to Plaintiff, the ALJ provided an "entirely conclusory statement that Dr. Roman's opinion was inconsistent with his treatment notes, and relatively benign mental status examinations."  Doc. 12-2 at 15 (cleaned up); *see* Doc. 11-1 at 44 (finding Dr. Roman's opinion unpersuasive).

Under the Social Security regulations, the ALJ is not required to defer or give any specific weight, including controlling weight, to any medical opinion or prior administrative medical finding.  20 C.F.R. § 404.1520c(a).  Instead, the ALJ must consider all medical opinions using the same specific factors outlined in the regulation, the most important of which are supportability and consistency.  *Id.* § 404.1520c(b)(2); *see also Webster*, 19 F. 4th at 719 ("The most important factors in determining the persuasiveness of a medical source are whether the source's medical opinion is based on objective medical evidence and supporting explanations and the consistency of the source's opinion with the evidence from other medical and nonmedical sources in the claim.") (cleaned up).  The supportability element requires the ALJ to evaluate how well a given medical opinion is supported by the objective medical evidence and supporting explanations of the medical source.  20 C.F.R. § 404.1520c(c)(1).  On the other hand, consistency requires the ALJ to evaluate how consistent a medical opinion is with other evidence in the record.  *Id.* § 404.1520c(c)(2).  The ALJ's discussion of the supportability and consistency factors must be "ample enough to permit meaningful judicial review."  *Ida D. v. Kijakazi*, No. 1:21-CV-206-BU, 2022 WL 19518458, at *4 (N.D. Tex. Nov. 8, 2022) (Parker, J.), *adopted by* 2023 WL 2474210 (Hendrix, J.) (cleaned up).  However, "[a]n ALJ is free to reject the opinion

9

of any physician when the evidence supports a contrary conclusion." *Id.* (quoting *Garcia v. Berryhill*, 880 F.3d 700, 706 n.7 (5th Cir. 2018)).

In support of her argument, Plaintiff cites to *Donna B.O. v. Kijakazi*, No. 1:22-CV-128-H-BU, 2023 WL 5004504 (N.D. Tex. July 18, 2023), *adopted by* 2023 WL 5004142 (Hendrix, J.). However, this case is distinguishable. In *Donna B.O.*, the ALJ determined that she "disagreed that the claimant's mild to moderate objective and clinical findings of her treatment history supported that level of limitation," but she did not identify the specific limitation that she disagreed with. *Id.* at *5. Upon review, the court found that the ALJ's explanation justifying her evaluation of the medical opinion was inadequate and conclusory because the ALJ "fail[ed] to provide any reasons why she [found the medical opinion's] marked mental limitations without support in the record, nor does the ALJ reference whether that limitation is inconsistent with the record." *Id.*

Here, however, the ALJ adequately discussed the supportability and consistency factors when determining the persuasiveness of Dr. Roman's opinion. Dr. Roman's opinion reported that Plaintiff had a "poor prognosis," and due to her narcolepsy, she had a "poor ability to sustain work." Doc. 11-1 at 458; Doc. 11-1 at 44. In contrast to Dr. Roman's opinion, the ALJ found that Dr. Roman's treatment notes and medical examinations reflected that Plaintiff was "polite and cooperative," [t]hought process was goal directed," and "[a]ttention, concentration, and memory were normal." Doc. 11-1 at 41; *see also* Doc. 11-1 at 42 (stating that Dr. Roman's mental status examination again found that Plaintiff's "thought process [was] goal directed," and "[a]ttention, concentration and memory were reported as normal"). Further, the ALJ noted that Dr. Roman's treatment notes and examinations reflected improvements in Plaintiff's condition,

10

her discontinuation of medication, and the situational stressors that contributed to some of her mental health struggles.  Doc. 11-1 at 41-44.  Based on these detailed findings, the ALJ properly found Dr. Roman's opinion unpersuasive "as it is inconsistent with his treatment notes, and relatively benign mental status examinations."  Doc. 11-1 at 44; *see Glass v. Comm'r of Soc. Sec.*, No. 2:20-CV-207-TBM-RPM, 2022 WL 990223, at *5 (S.D. Miss. Mar. 31, 2022) (finding that the ALJ's opinion thoroughly considered the evidence, including the fact that testimony from treating physician was inconsistent with treatment notes); *Ida D.*, 2022 WL 19518458, at *5 (finding that ALJ adequately discussed supportability and consistency factors when she included an "analysis of record evidence considered in making her RFC determination before rejecting [the medical opinion]").

The ALJ's analysis of Dr. Roman's opinion and the medical record demonstrates that she adequately considered the consistency and supportability factors, and furthermore, provides "an accurate and logical bridge between the evidence and the final determination."  *Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010).

### C. The ALJ Properly Analyzed Plaintiff's Subjective Symptom Testimony and Third-Party Testimony.

Finally, Plaintiff asserts that the ALJ failed to properly analyze Plaintiff's testimony regarding her subjective symptoms, specifically her daily activities, and the statement of Ms. Reyes, Plaintiff's child's aide.  Doc. 12-2 at 16-20.  The Commissioner counters that the ALJ followed the relevant legal standards and the ALJ's conclusion is supported by substantial evidence.  Doc. 18 at 8-10.  Upon review, the Court determines that the Commissioner is correct, and Plaintiff's arguments fail.

11

Credibility determinations by an ALJ are entitled to significant deference by the court so long as the determination is supported by substantial evidence. *Garcia v. Astrue*, 293 F. App'x 243, 246 (5th Cir. 2008). The ALJ is in the best position to assess a claimant's credibility because "[t]he ALJ enjoys the benefit of perceiving first-hand the claimant at the hearing." *Falco v. Shalala*, 27 F.3d 160, 164 n.18 (5th Cir. 1994). Nevertheless, the ALJ's determination regarding credibility must contain specific reasons for credibility findings, supported by the evidence in the case record, and must be sufficiently specific "to make clear to the claimant and to any subsequent reviewers the weight the adjudicator gave to the claimant's statements and the reasons for that weight." *Undheim v. Barnhart*, 214 F. App'x 448, 450-51 (5th Cir. 2007).

*Plaintiff's Subjective Testimony:* Under the relevant Social Security regulations, the ALJ must follow a two-step process for evaluating a plaintiff's subjective complaints. 20 C.F.R. §§ 404.1429, 416.929; SSR 16-3p, 2017 WL 5180304, at *2-3 (S.S.A. Oct. 25, 2017). First, the ALJ must consider whether the claimant had a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. SSR 16-3p, 2017 WL 5180304, at *3-4. Once an impairment is shown, the ALJ must evaluate the intensity, persistence, and limiting effects of the alleged symptoms to determine the extent to which they limit the individual's ability to do basic work activities. *Id.* at *4-5.

The ALJ must consider the entire record, including a non-exhaustive list of seven factors, when evaluating the intensity, persistence, and limiting effects of a claimant's symptoms. *Id.* at *7-8 (listing factors). However, a plaintiff's statements about pain or other symptoms do not alone establish a disability; rather, those statements must be supported by objective medical evidence. 20 C.F.R. § 404.1529(a). "Although the ALJ must give specific reasons for making

12

this determination, 'neither the regulation nor interpretive case law requires that an ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form. It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were considered.'" *Bell v. Kijakazi*, No. 3:22-CV-1190-G-BH, 2023 WL 5836826, at *12 (N.D. Tex. July 14, 2023) (Ramirez, J.) (quoting *Prince v. Barnhart*, 418 F. Supp. 2d 863, 871 (E.D. Tex. Sept. 9, 2005)), *adopted by* 2023 WL 5835972 (Fish, J.).

Plaintiff argues that the ALJ failed to consider her subjective complaints regarding her daily activities and rather "confined her analysis to objective medical evidence exclusively." Doc. 12-2 at 20. To the contrary, the ALJ's decision carefully recounts the record, including the hearing testimony, Plaintiff's Function Reports, and the medical evidence and opinions. Doc. 11-1 at 39-43. Although Plaintiff avers that the ALJ failed to consider her daily activities, as the Commissioner correctly notes, the ALJ's decision frequently cites to the Function Reports, which details Plaintiff's ability to perform daily activities such as household chores and personal care. Doc. 11-1 at 39-40; *see Short v. Comm'r, Soc. Sec. Admin.*, No. 5:24-CV-197-H 2025 WL 1949537, at *4 (N.D. Tex. July 16, 2025) (Hendrix, J.) (finding that ALJ reviewed the plaintiff's daily activities because the ALJ decision discussed plaintiff's ability to perform household chores and personal care).

The ALJ also considered Plaintiff's hearing testimony, including her purported inability "to work due to problems with anxiety, depression, ADD, and narcolepsy." Doc. 11-1 at 41. Indeed, the ALJ specifically notes Plaintiff's allegations "that symptoms that preclude her from working are sleep disturbance, decreased motivation and depressed mood[,] trouble remembering and concentrating, and diminished interest in doing daily activities." Doc. 11-1 at 41. The ALJ

13

also detailed the medical record, including Dr. Roman's testimony and Dr. Dolan's medical examination of Plaintiff. Doc. 11-1 at 41-42; *see Britton v. Saul*, 827 F. App'x 426, 431 (5th Cir. 2020) (finding no error in ALJ's application of legal standards because the ALJ considered all relevant evidence, including the function report, subjective testimony, hearing testimony, and medical evidence).

Based on the record, the ALJ concluded that there are "inconsistencies" between the "medical evidence" and Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms. Doc. 11-1 at 43. In contrast to Plaintiff's statements, the ALJ noted that the medical evidence "indicates improvement with medication [and] . . . shows that a lot of the claimant's psychiatric symptoms are stressor-based in light of [her] life situations, such as martial separation." Doc. 11-1 at 43. As the ALJ properly considered all relevant evidence in evaluating Plaintiff's credibility, there is no reversible error. *Britton v. Saul*, 827 F. App'x at 431.

*Third-Party Testimony:* SSR 16-3p permits the ALJ to consider information from other sources, such as testimony from family and friends, when assessing the intensity, persistence, and limiting effects of a plaintiff's symptoms. 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 82 Fed. Reg. 49462, 2017 WL 4790249, 49465 (S.S.A. Oct. 25, 2017). However, an ALJ is "not required to articulate how [she] considered evidence from nonmedical sources[.]" 20 C.F.R. § 404.1520c(d).

Here, Ms. Reyes opined that Plaintiff's purported medical impairments limit her ability to work because, *inter alia*, she is "unable to communicate with others due to loss in social skills" and is "easily fatigued." Doc. 11-1 at 327. Ms. Reyes also opined that Plaintiff helps care for

14

her children and herself, but with "with constant reminder[s]." Doc. 11-1 at 328. In reaching her determination, the ALJ "considered" the third-party statement, but noted that Ms. Reyes was not a "disinterested" party. Doc. 11-1 at 44. In line with the regulations, the ALJ did not, and is not required to, articulate how she considered the third party's statement. 20 C.F.R. § 404.1520c(d).

### IV. CONCLUSION

In sum, the Court finds that the ALJ's decision is supported by substantial evidence and that the ALJ applied the proper legal standards when evaluating the evidence in this case. Accordingly, the Commissioner's decision is **AFFRIMED**.

**SO ORDERED** on September 5, 2025.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

15